WILLIAM R. MONTGOMERY AND FRANKLIN L. LORD v. HARRY A. MARTIN, GEORGE BECK, AND JAMES C. HAMILTON.

*Justices of the peace—Jurisdiction—Action on constable's bond—Right of assignee of judgment creditor—Partnership—Evidence.*

1. How. Stat. § 6988, which authorizes an action of *assumpsit* upon a constable's bond in favor of the party entitled to moneys collected by the constable on execution, and which he refuses to pay over, and a recovery in said suit of the amount of the execution, with interest from the time of the rendition of the judgment upon which the execution was issued, is not limited in its operation to bonds in a penalty not exceeding $300, but confers jurisdiction upon justices of the peace up to the statutory limit, regardless of the amount of the penalty of the bond upon which the action is brought.

2. After the commencement of a suit in justice's court by a firm, and before the rendition of a judgment in their favor, one of the partners assigned to the firm's attorneys in the case all of his right, title, and interest in or to the claim sued upon. An execution was issued on the judgment, and delivered to a constable, who collected the moneys due thereon, and neglected to pay the same over. The assignees sued the constable and his sureties on his bond, and their right to maintain the suit was denied on the ground that the right of recovery conferred by How. Stat. § 6988, applies only to the plaintiff named in the execution, and does not extend to the owner of the judgment through assignment. And it is held that the party in whose interest the money is received may bring the action, and that the right to bring it is not confined to one whose right to the money has been adjudicated.

3. The assignor, after testifying that he and his co-plaintiff were

partners, was asked whether, at the time the suit was brought, the money (claim) belonged to him or the partnership, and, against the objection that the question called for a conclusion of law, was allowed to answer that it belonged to the witness alone. The defendants introduced testimony tending to show that the assignor did not own the claim, and the only evidence to the contrary was his wholesale statement that he owned it. And it is held that the assignor testified to a conclusion, and this in the face of an objection that apprised counsel for plaintiffs that this was a disputed question; that it was not shown that the assignor was expressly authorized to assign the claim to plaintiffs; that, if it be contended that as partner he might lawfully sell the firm's interest, it was still important, owing to the qualified nature of the assignment as to the interest assigned, to know what his interest actually was; and that, for the admission of this testimony, the judgment in favor of the plaintiffs should be reversed.

Error to Wayne. (Donovan, J.) Argued January 24, 1895. Decided March 19, 1895.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*James Swan,* for appellants.

*Franklin L. Lord,* for plaintiffs.

HOOKER, J. Martin was a constable, having given the statutory bond of $2,000. He collected $135.11 and costs, amounting in all to $144.50, from one Haggerty. At the time, he had in his hands an execution in the case of *Nelson & Moorey v. Haggerty* for $133.61 damages and $1.50 costs. At the same time he had in his possession an execution against *Nelson & Moorey ads. Wheeling & Lake Erie Coal Company.* He also had what he calls a "body execution" against *Haggerty, Garnishee of Nelson & Moorey, ads. Wheeling & Lake Erie Coal Company.* These last two writs are not shown by the record, but it seems to be conceded that the "body execution" was an attachment against Haggerty for not appearing in obedi-

ence to a garnishee summons. It appears that the money
was collected upon the execution first mentioned. Defend-
ant Martin says that he took the money to the justice,
who refused to accept it, and that the execution was never
returned, or the money paid over to any one.

Montgomery & Lord, the plaintiffs, are lawyers, who
procured the judgment in the case of *Nelson & Moorey v.
Haggerty.* They base their claim in this action upon an
assignment reading as follows:

"May 15, 1893.

"For a valuable consideration, to me in hand paid by
Montgomery & Lord, attorneys at law, the receipt whereof
I hereby acknowledge, I, Alexander Nelson, of Detroit,
do hereby assign, sell, transfer, and set over to the said
Montgomery & Lord all my right, title, and interest in or
to the claim now owing to me from H. H. Haggerty, and
now in litigation in the justice's court of the city of De-
troit, before Justice John B. Teagan, with full power to
sue for and collect the same.[1]

"Detroit, Michigan.

"ALEXANDER NELSON.   [ L. S.] "

They contend that they were entitled to the amount
collected, and to bring an action under section 6988, How.
Stat., reading as follows:

"If a constable shall neglect or refuse to return an
execution, and pay over the moneys by him collected,
within five days after such execution shall have been paid,
or shall neglect to levy an execution, or otherwise execute
the same according to law, the party in whose favor such
execution was issued, or who shall be entitled to such
moneys, may maintain an action of *assumpsit*, in his own
name, upon the instrument of security given by such
constable and his sureties; and in such suit the amount
of the execution, with interest from the time of the
rendition of the judgment upon which the same was issued,
shall be recovered; and execution shall issue forthwith, and
no stay of execution shall be allowed."

The first contention is based upon the proposition that juris-

---

[1] Judgment was rendered May 17, 1893.

diction depends upon the amount of the bond, and that, where the penalty exceeds $300, the justice has no jurisdiction. This overlooks section 6988, which provides for an action of *assumpsit* upon a constable's bond in behalf of the person entitled to moneys which the constable refuses or neglects to pay. It authorizes a judgment for the amount, with interest and costs. In this it differs from cases arising upon probate bonds, where the judgment is taken for the amount of the penalty of the bond, *scire facias* being resorted to on further breaches. *Probate Judge v. Dean,* 52 Mich. 387. See, also, *Bishop v. Freeman,* 42 Mich. 535; *Gray v. Stafford,* 52 Id. 497. The statute mentioned (section 6988) confers jurisdiction upon justices of the peace in cases like this.

It is next contended that the right of recovery conferred by section 6988 applies only to the plaintiff named in the execution, and does not extend to the owner of the judgment through assignment. The statute says the action may be brought by "the party in whose favor such execution was issued, or who shall be entitled to such moneys." By this we understand that the party in whose interest the money is received may bring the action, and that it is not confined to one "whose right to the money has been adjudicated."

Alexander Nelson, a witness for the plaintiffs, testified that he and Moorey were partners. He was then asked the following: "*Q.* At the time the suit was brought, did the money belong to you or to the partnership?" Against defendants' objection that it asked for a conclusion of law, he was allowed to answer, "To me alone." It cannot be doubted that this involved a conclusion. Counsel asserts that this was not so, "because there was no evidence before the court from which the judge or jury could have concluded the answer at that time." If that

is so, it would seem that the answer was the more objectionable. It permitted the witness to determine from his knowledge of the facts the question of ownership, which was one of the questions in dispute. Counsel admitted that "it was material to show to whom this money belonged at the time the suit was brought, before the plaintiffs could properly introduce evidence to establish their right to recover in this action." This was all the testimony given in behalf of the plaintiffs from which such ownership could be found. Nelson did not qualify it by stating any facts in relation to it. Upon behalf of the defendants, Moorey testified that this bill was in court at the time the partners ceased doing business together, and that it was never agreed that Nelson should have the money on that bill, but it was agreed that the Wheeling & Lake Erie Coal Company should have it. Here, then, were certain facts and circumstances that tended to show that Nelson did not own the claim, and the only evidence to the contrary was the wholesale statement by Nelson that he owned it. Clearly he testified to a conclusion, and this in the face of an objection that apprised counsel that this was a disputed question; and it is as plain that it was not cured by any subsequent version of the facts and circumstances which tended to show such ownership. The evidence in the case does not show that Nelson was expressly authorized to assign this claim to the plaintiffs, and, if it be contended that as partner he might lawfully sell the firm's interest, it was still important to know what his interest actually was, as the assignment only disposed of his right, title, and interest, and did not purport to convey the interest of the firm. If, as he said, he owned the whole claim, the assignment conveyed it; otherwise not.

For the admission of this testimony, we think the judg-

ment should be reversed, and a new trial directed.    It is.
ordered accordingly.

LONG, GRANT, and MONTGOMERY, JJ., concurred.    MC-
GRATH, C. J., did not sit.